Good morning, Your Honors. Tara Hoagland on behalf of Jerry Preciado, appellant. May it please the Court, I would like to reserve three minutes for rebuttal. I will watch my time. All right. Thank you, Counsel. The certified issue is whether the District Court erred in finding that the California Supreme Court did not unreasonably determine the facts without first holding an evidentiary hearing. A District Court can order an evidentiary hearing where 2254-D is satisfied. This is one of those rare cases where 2254-D-2 was satisfied in the District Court and the District Court failed to remand the State Court for a hearing and failed to hold its own hearing. In this case, Petitioner had filed a prima facie case in the California Supreme Court supported by 12 declarations and documentary evidence developing his claims. The California Supreme Court issued a summary denial without ordering an evidentiary hearing and giving the Petitioner an opportunity to further develop those claims. None of the Petitioner's allegations were incredible and none of them were affirmatively refuted by the State Court record. This was error for the State Court to summarily deny the Petition and was an unreasonable determination of facts under 2254-D-2. Now in District Court, the Magistrate only assessed the case under 2254-D-1. The Magistrate ignored the D-2 argument completely. And in doing so, the Magistrate further erred in deciding that Petitioner did not meet D-1 based on the expanded record in District Court of trial counsel's declaration. Penholster specifically prohibits a District Court from finding a 2254-D argument based on evidence adduced in Federal Court. The Court is limited to State Court. Yes? Okay, I just want a clarifying question for you. So are we supposed to just determine whether the State Court failure to hold an evidentiary hearing was to resolve his claim that IAC claims on the record was unreasonable? Or are you asking us to determine whether the Court's conclusion that Preciado's ineffective assistance of counsel claims failed on the merits in general was unreasonable? The former, Your Honor. Because that's the certified issue, correct? Yes. So we're asking this Court to determine that the State Court's ruling was an unreasonable determination of fact under 2254-D-2. And what was the unreasonable determination of fact you're asserting? The State Court has an obligation to allow Petitioner to develop his claims if he has set forth a prima facie case. That sounds like an illegal argument. What's the unreasonable determination of fact? The State Court only issued a summary denial. So the State Court basically, by issuing a summary denial, said there's no prima facie case. I can give the Court the California Supreme Court, which is where the habeas was brought. So that's where you're saying was the unreasonable? Determination of facts, yes. The trial court What was the specific fact that was unreasonably determined? For example, the Petitioner had three claims. Two involved witnesses not brought at trial and one involved the advice that he received regarding whether to take the plea before the second trial. In this case, defendant was offered an 18-year plea before the first trial and the first trial ended in a hung jury with six for acquittal and six for guilt. On that day, the prosecution offered him an 11-year plea. So why was it at all unreasonable to reject that? He had already had a mistrial, so a reasonable assumption would be that he had a pretty good chance of winning on a retrial. That's exactly the crux of the issue, Your Honor, is trial counsel told Petitioner that he would have a good chance of winning on the retrial and to reject the 11-year plea. However, trial counsel did not tell Petitioner that he planned on calling no other defense witnesses at the second trial, only Petitioner himself. Now at the first trial, and what was unreasonable about that? Though it wasn't before the California Court, the record that was developed here shows that he had talked to the jurors after the first trial, and they didn't believe the other three witnesses. So he's better off without them. That is trial counsel's disputed declaration, because Petitioner was never given a chance to cross-examine him at a hearing. Just as the State says that Petitioner's declaration is self-serving, we would argue that so is trial counsel's, and the only way to reserve those credibility determinations is during a hearing. But moreover, more than that, is in the State court... There isn't a standard that his decision not to call those witnesses has to be utterly unreasonable, not just that it was wrong. Trial counsel's decision? Yeah. The standard is whether the State court's decision was utterly unreasonable. Trial counsel's decision wasn't before the State court. The State court made an unreasonable determination of facts without the benefit of trial counsel's declaration, explaining that he ostensibly talked to the jurors and ostensibly told Petitioner that he had done so, which Petitioner disputes. What's your best authority? What's your best case that has said that a Supreme Court decision was an unreasonable determination of facts for issuing a summary denial in this kind of incidence? What's your best case for that? Nunes v. I'm sorry. Nunes v. Mueller and Hurls v. Ryan. Hurls is not a Supreme Court case. Yes, you're right, Your Honor. I'm sorry. I was checking out my Ninth Circuit cases. What Supreme Court case do you have? Well, I would go back to Richter and Penholster that the magistrate actually used to say that Petitioner hadn't cleared 24D1. What language in Richter supports the argument that the State court made an unreasonable determination of fact? I'm rarely denying, because that's what you're saying, right? Yes. Because normally an unreasonable determination of fact is finding an actual problem in the fact that the Supreme Court reviewed that was not accurate, was not true, and they relied on it, or in the fact-finding process. And I'm trying to open and trying to understand your argument here, because this is novel. It seems like a novel approach. I would dispute that it's novel, and I do have language from Richter itself. When a State court issues a summary denial, the district court must determine what arguments or theories could have supported the State court's decision, and then it must consider if fair-minded jurists would disagree. You're saying there can never be a summary denial from a State Supreme Court? Actually, there can be. There can be a summary denial if the allegations brought in State court are either incredible or affirmatively refuted by the record. And that's the issue here, is neither one of those instances occurred. So we had reliable factual allegations that really brought the case into dispute. We had witnesses who saw another shooter. We had witnesses who ---- Well, hold on just a second. Yes. Because when you say you have reliable, one of your issues is the failure to contact Mr. Gillian, Gillian? Yes. All right. But trial counsel stated in his declaration he did not contact Mr. Gillian because he was never provided his name. It doesn't seem from your briefs that you ever argue or point to any evidence contesting that fact. So why would it have been unreasonable or why is that a basis that you're claiming, that it was unreasonable for the State court on this record alone to have decided trial counsel was not ineffective? Mr. Gillian was on the scene and had contact with Mr. Penerny and the victim. So it's odd to me that had trial counsel done a reasonable investigation that he would not have turned up Mr. Gillian who was on the scene at the time of the shooting when he talked to the other witnesses who were also on the scene at the time of the shooting. How would he tell us how he would have found it? What's the trail that would have led him to it? Because he's claiming he never was provided his name. I would say that Penerny, Glenn Penerny had said that he made eye contact with Rick Gillian. And he never actually talked to Penerny before the trial. He got a fax from Penerny after the trial. So basically he sent his investigator to knock on his door and he wasn't there and then he never tried again. All right, counsel, you've exceeded your time. We'll give you a minute for a rebuttal. Thank you. Good morning. May it please the Court. Deputy Attorney General Carlos Dominguez for Respondent. I'd like to first address the standard review. This Court is reviewing, of course, the State Supreme Court's summary denial. And that summary denial, as you know, is based on the fact that the State Supreme Court conclusively resolved each of Petitioner's claims. And that's why the State Supreme Court did not have to hold a hearing. So what's the standard review? You said you were going to tell us the standard of review. What is it? This Court is reviewing de novo, the denial of relief, and is reviewing for abuse of discretion the denial of the evidentiary hearing in Federal court. And I'd like to make clear, because we do have a declaration from trial counsel that was provided in Federal court, but that declaration was not before the State Supreme Court. And I'd like to keep those separate because... No, that's a fair point. But then the question is, having nothing before it, the California court denied the petition without a hearing, without any information that would enable it to assess whether or not the Supreme Court had at least some of the allegations, the failure to investigate, the failure to call witnesses. I can see how they could deny on the face of the petition the failure to accept a guilty plea because on its face there had been a hung jury. But how about the other points? Correct. So let me push back on that because it didn't have the trial counsel's declaration, and that came obviously later in Federal court. But it did have declarations from the witnesses, and it had the trial court record for both trials, both the hung jury and the second trial when he was convicted. So let me walk through the declarations and explain why the record before the State Supreme Court was sufficient to resolve the claims. So we have declarations first from the witnesses that did testify, and those were before the State Supreme Court. We have a declaration from Hugo Lopez, and in his declaration he says that he saw Petitioner driving his truck away from the scene of the crime shortly before the shooting. However, on cross-examination, if we look at the record from the first trial, he admitted that it was possible for Petitioner to come back to the shooting. So for each of these witnesses, they simply did not perform well on the stand, and they were successfully cross-examined. As far as Mario Gonzalez, in his declaration he says that he saw Petitioner driving his truck away from the scene of the crime shortly before the shooting.  And he admitted that it was possible for Petitioner to come back to the shooting. So we have declarations from the witnesses that did testify, and those were before the State Supreme Court. And we have declarations from the witnesses that did testify, and those were before the State Supreme Court. So my point is, in the declaration he said, I saw Petitioner driving away in his truck. If we look at the trial court record, he was cross-examined, and he admitted that actually it was possible for him, for Petitioner to just turn around and drive back to the scene of the crime. For Mario Gonzalez, in the declaration he says, Petitioner and I left shortly before the shooting. If we look at the trial transcript, and we assume that the State Supreme Court reviewed Petitioner's testimony, reviewed everything, it actually, on a cross-examination, he admitted that Petitioner was still there when he had left, when Mr. Gonzalez had left. And finally, for the last witness at trial, Jorge Arishaga, we don't have a declaration, so we don't know whether he was willing to testify. But even if we look at the trial testimony, his testimony was inconsistent. He only heard shots. He didn't see the shooting. So it really wasn't helpful. What about Mr. Guillen? I think Rick Guillen was his name. Because it seems like trial counsel never contacted him, and according to your colleague across the aisle, should have easily been able to find him. Well, not necessarily, because if we look at his declaration, that's at SCR 3. These are the excerpts that I provided to the Court. He says there really is no evidence he would have testified. He never spoke to anybody about it, and he never contacted the police. And Petitioner never gave Mr. Guillen's name to counsel. Obviously, counsel here is presumed to be competent, and he's only required to conduct a reasonable investigation. So there's no reason or there's no way for trial counsel to have found Mr. Guillen. As far as the other witnesses, the other three witnesses that were not called in either trial, there's evidence in the record, again, before the State Supreme Court, that these witnesses were actually contacted and spoken with. Mr. Preciado, which is Petitioner's brother, he was contacted and spoken with, but he wouldn't have been a good witness because he would have been open for impeachment for bias, and there was evidence that he actually intimidated one of the prosecution's witnesses. Mr. Aviles and Mr. Penanuri were both actually on call in the first trial, and we know, obviously, that Petitioner, that trial counsel had called, or at least spoke to both of them and put them on call. They were never called. And Mr. Penanuri's declaration is, Mr. Penanuri and Rick Guillen's declarations both talk about this being a gang shooting, and they allude to the fact that this was a gang shooting, but there was simply no evidence in this case that gangs were involved. The police reports never talked about gangs. It wasn't charged as a gang case, so trial counsel made the reasonable tactical decision not to call these witnesses. As far as the plea offer, I could speak to that a little bit. Before the first trial, Petitioner was offered 18 years, and he rejected that, went to trial. Trial counsel got a mistrial, a hung jury, 6-6, and then he was offered even a better deal, 11 years. The trial counsel in this case really understood the strengths and weaknesses of the case and told Petitioner the same, and based on that advice, that was reasonable advice, and it wasn't gross error to do that, and Petitioner reasonably rejected that. Our first argument is the court should look at the state Supreme Court's denial of relief and conduct a 2254 D analysis and give deference to that. But even if this court reviews the case de novo and actually considers trial counsel's declaration, this case becomes even easier because that declaration really corroborates everything that the state court record really shows in this case. Which path should we take here? We believe 2454. It should defer to the state court's decision because we do have a summary denial that this court should defer to. But we're in a weird situation where we have a trial counsel's declaration, which is even, I think, more helpful for the court. So even under de novo review, this court should deny the claim. Helpful to the court or helpful to you? Helpful. It's helpful, I think, just so this court really feels sure about this case, that trial counsel was competent and really did a good job. So even if it wasn't helpful, the declaration is what it is. So this court, if it needs to, can consider it. Unless the court has any further questions, I'll yield my time. It appears not. Thank you, counsel. Thank you. Rebuttal. One minute. Yes, Your Honor. I would just like to start by saying that there should be no deference to the state court summary denial. And the reason for that is when an adjudication is made on an incomplete record, deference is not afforded, and that's what happened in this case, is the state court had an incomplete record because they did not allow Petitioner to develop his claims. And he has met the 2254D2 threshold. Thank you.
judges: Rawlinson, Murguia, Rakoff